**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Jeffrey Ryan Kooi,<br><br>Debtor(s). | C/A No. 26-00159-EG<br><br>Adv. Pro. No. 26-80021-EG<br><br>Chapter 7 |
| Bridgehead Legal Capital, LLC<br>BHF I, LLC,<br><br>Plaintiff(s),<br><br>v.<br><br>Jeffrey Ryan Kooi,<br><br>Defendant(s). | **ORDER ON MOTION TO DISMISS COMPLAINT TO DETERMINE DISCHARGEABILTY OF DEBT** |

**THIS MATTER** comes before the Court on Defendant Jeffrey Ryan Kooi's ("Debtor" or "Defendant") Motion to Dismiss Complaint to Determine Dischargeability of Debt filed on June 22, 2026 (the "Motion").[1] The Complaint objects to the dischargeability of the debt that Debtor owes to Plaintiffs Bridgehead Legal Capital, LLC ("Bridgehead Capital") and BHF I, LLC ("BHF" and, collectively with Bridgehead Capital, "Plaintiffs") pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). On June 24, 2026, the Court entered an Order setting deadlines for the parties to respond to the Motion and for the filing of a reply (the "Scheduling Order").[2] The Scheduling Order further provided that "[a]fter the expiration of the deadlines set forth herein, the Court may set the matter for a hearing or issue a decision based on the pleadings before it."

[1] ECF No. 13.
[2] ECF No. 14.

Plaintiffs filed their Objection to the Motion on July 14, 2026.[3] Defendant filed a Reply in support of the Motion on July 20, 2026.[4] The parties' arguments have been fully presented in the extensive briefing. Having thoroughly reviewed the pleadings, the Court concludes that oral argument would not materially aid its decision process and that a hearing is unnecessary to resolve the Motion. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The primary matters raised in the adversary proceeding make it a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has statutory authority to enter a final judgment. Having reviewed the Complaint commencing this adversary proceeding, the Motion, the Objection, and the Reply, the Court (1) grants the Motion as to Count I (11 U.S.C. § 523(a)(2)) with leave to amend the Complaint, (2) grants the Motion as to Count II (11 U.S.C. § 523(a)(4)) and dismisses it with prejudice; and (3) denies the Motion as to Count III (11 U.S.C. § 523(a)(6)).

## BACKGROUND AND ALLEGATIONS IN THE COMPLAINT

Debtor filed his chapter 7 petition and schedules on January 14, 2026. An April 27, 2026 deadline was imposed to file objections to Debtor's discharge. Debtor's Schedule F lists Bridgehead Capital as an unsecured, noncontingent, liquidated, and undisputed creditor in the amount of $554,900.00 for a "business loan." On May 29, 2026, the Chapter 7 Trustee filed a Notice of Assets and Request for Notice to Creditors to File Claims.[5]

Plaintiffs timely filed the complaint in this action on April 27, 2026 (the "Complaint"), asserting that the debt that Debtor owes them in an amount not less than $624,292.91 (the

---

[3] ECF No. 16.
[4] ECF No. 18.
[5] The deadline for non-governmental creditors to file a proof of claim is September 1, 2026.

"Bridgehead Debt") is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). The Bridgehead Debt consists of a principal balance of $554,900.00 and accrued but unpaid interest of $69,392.91 calculated as of September 15, 2025.

All facts set forth below are drawn from the Complaint and accepted as true for purposes of the motion to dismiss, as required under Federal Rule of Civil Procedure 12(b)(6), applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012.

Plaintiffs are commercial lenders that provide financing to law firms throughout the United States.[6] (Compl. ¶ 11.) The Complaint asserts that Defendant is an attorney licensed to practice law in Indiana and Illinois since November 2000 and was the founding member of Kooi Law Firm, LLC ("Kooi Law"), an Indiana limited liability company formed in 2015. (Compl. ¶¶ 12-13, 83.) On or about May 6, 2024, Defendant sought funding for Kooi Law by submitting a "Settled Case Fee Advance Funding Application" (the "Initial Application") to Advanced Legal Capital, a third-party broker. (Compl. ¶ 17.) The Initial Application represented that a settlement had been reached in connection with claims brought against Schneider Electric USA, Inc. f/k/a Square D (the "Rairigh Case") for which payment would be forthcoming to Kooi Law by September 2, 2024. (Compl. ¶¶ 18-21.) The Initial Application, signed by Defendant, made various representations to Advanced Legal Capital and its affiliates, including as to the truthfulness of the information provided by the applicant and that "the Funder and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained" in the Initial Application. (Compl. ¶¶ 20-23.) The Plaintiffs aver that the Initial Application, along with what was purported to be a

[6] According to the Complaint, Bridgehead Capital is the manager for BHF, with fully delegated responsibility for overseeing BHF's business and managing its day-to-day operations.

fully executed confidential settlement agreement in the Rairigh Case, was provided to Plaintiffs. (Compl. ¶ 23.)

On or about May 7, 2024, Defendant also completed and submitted a loan application to Bridgehead Capital (the "Loan Application") on behalf of Kooi Law seeking up to $500,000.00 in funding. (Compl. ¶ 25.) The Loan Application represented that neither Kooi Law nor any of its partners had judgments against them, were involved in pending or threatened litigation, or were members of other law firms or entities other than Kooi Law. (Compl. ¶¶ 26-29.) The Loan Application listed only three outstanding debt obligations owed by Kooi Law: (a) a $64,000.00 line of credit with Community First Bank of Indiana, (2) a $50,000.00 line of credit with National Bank of Indiana, and (3) an American Express card, which Defendant represented as "typically paid in full." (Compl. ¶ 55.) Pursuant to the Loan Application, Defendant acknowledged that Bridgehead Capital could "rely upon the information contained in the application in all respects." (Compl. ¶ 29.)

Based on the disclosures and representations made in the Initial Application and the Loan Application, Plaintiffs agreed to extend a loan to Kooi Law through BHF to fund the law firm's operational expenses. (Compl. ¶¶ 30-31, 116.) The parties executed a Loan and Security Agreement with an effective date of May 15, 2024 (the "Loan and Security Agreement"), whereby BHF agreed to loan Kooi Law $318,000.00. (Compl. ¶ 32.) On July 27, 2024, the parties executed a First Amendment to Loan and Security Agreement (together with the Loan and Security Agreement, the "Loan Agreement") for an additional $236,900.00 in funding. (Compl. ¶ 33.) Defendant also executed a Guaranty of Payment and Performance (the "Guaranty") in connection with the Loan Agreement, guaranteeing payment of all present and future obligations of Kooi Law and acknowledging that BHF would not be willing to

execute the loan without the execution of the Guaranty. (Compl. ¶¶ 35-36.) Pursuant to the Guaranty, Defendant took on all fiduciary obligations set forth in the Loan Agreement and promised not to allow or permit to be made any transfer of his interest in Kooi Law without first obtaining BHF's consent. (Compl. ¶¶ 37-39.)

The Loan Agreement required Kooi Law to repay the loan in its entirety upon receipt of proceeds from the Rairigh Case. (Compl. ¶¶ 43-44.) Kooi Law was also obligated to pay BHF 15% of any fees or case proceeds received throughout the term of the Loan Agreement until the loan was paid in full. (Compl. ¶¶ 43-44.) The Loan Agreement further provided for monthly interest payments on the outstanding principal amount. (Compl. ¶ 79.) To secure repayment of the loan, Kooi Law granted BHF a security interest in the entire case portfolio and assets of Kooi Law. (Compl. ¶ 42.) Among other conditions and covenants, the Loan Agreement also prohibited Kooi Law from taking on additional debt without BHF's consent, required notification within five days of material changes in the operations or business of Kooi Law or in the status of a particular case, and required notification of any material change in the status of a case or any information that could impact the valuation of a case. (Compl. ¶¶ 45-53.) The Loan Agreement stated that case proceeds were to be held in trust for the benefit of BHF. (Compl. ¶ 50.)

On July 24, 2024,just a few days before the execution of the amendment,Defendant sent the president of Bridgehead Capital a document titled "Kooi Law Firm Work in Progress Report as of July 2024" (the "WIP Report"), listing 318 cases with aggregate expected payouts of approximately $9.9 million. (Compl. ¶¶ 74-75.)

Plaintiffs allege that multiple representations were false. (Compl. ¶¶ 55-72; 109-115.) Among other things, Plaintiffs aver that the Rairigh Case settlement had not been approved

by the respective parties or their representatives at the time the Loan Application was submitted. Moreover, the Complaint asserts that Defendant failed to disclose that, at the time BHF loan documents were executed, (a) Kooi Law was obligated to Bankers Healthcare Group ("BHG Loan") on a promissory note in the amount of $535,921.02 executed in 2020, (b) Defendant and Kooi Law were indebted to NuDirection in the approximate amount of $250,000.00, and (c) Defendant had understated the obligation owed to the National Bank of Indiana—disclosing it at $50,000.00 when the line of credit was up to $142,000.00. According to Plaintiffs, these three obligations were either in default as of May 2024 or legal proceedings had been threatened or initiated at the time Defendant signed and submitted the Loan Application. (Compl. ¶¶ 64, 67, 69-72.) Plaintiffs aver that had Defendant disclosed the existence of these outstanding loans, Plaintiffs would not have extended funding to Kooi Law. (Compl. ¶¶ 63, 68, 70.)

At no time since the inception of the Loan Agreements has Kooi Law or Defendant made any payment of case proceeds to Plaintiff, instead claiming that they have not received any such proceeds through the time period. (Compl. ¶¶ 76-77.) Moreover, starting in November 2024, Kooi Law failed to make its monthly interest payments to Plaintiff; accordingly, Kooi Law was declared in default in April 2024. (Compl. ¶ 79.)

The Complaint asserts that Defendant formed Kooi Investments, LLC in 2008. (Compl. ¶ 84.) Kooi Investments, LLC had purchased the real property in which Kooi Law operated its law practice. (Compl. ¶ 84.) On January 23, 2025, after Defendant and Kooi Law had defaulted on their debts and without disclosing it to Plaintiffs, Defendant formed Indy Firm, LLC. (Compl. ¶ 85.) Subsequently, on June 30, 2025, Defendant dissolved Kooi Law and Kooi Investments, LLC, which had sold the office building on June 25, 2025. (Compl.

¶¶ 87-80.) Defendant also failed to disclose that information to Plaintiffs. (Compl. ¶ 89.) The website for Indy Firm now links to that of another law firm—Golitko & Daly, P.C. ("Golitko Firm"). (Compl. ¶ 93.) The Complaint asserts that Defendant recently filed notices of substitution of counsel in several pending cases, adding Golitko Firm as the counsel of record. (Compl. ¶ 94.) When questioned about the status of his cases, Plaintiffs aver Defendant told them in August 2025 that he only had nine active cases—despite claims a few weeks earlier to have had more than fifty-seven cases—plus an additional twenty-two cases he was "fighting" to retain after some associates had left the firm. (Compl. ¶ 97.)

Lastly, Plaintiffs aver that at his § 341 meeting of creditors held on February 24, 2026, Defendant admitted that he personally retained at least four workers' compensation cases previously belonging to Kooi Law and settled two of them without remitting the proceeds to Plaintiffs. (Compl. ¶¶ 123 and 131.)

## THE MOTION TO DISMISS AND RESPONSE

In Count I of the Complaint, Plaintiffs object to the dischargeability of the Bridgehead Debt pursuant to 11 U.S.C. § 523(a)(2). Plaintiffs seek the Bridgehead Debt's nondischargeability because the Initial Application, the Loan Application, the Loan Agreement, and the WIP Report "contained information and representations made by the Defendant in writing regarding the Defendant and his law firm's financial condition which were materially false and were provided by Defendant to intentionally deceive Plaintiffs and induce them to lend money to Defendant law firm." Moreover, Plaintiffs assert that Plaintiffs "justifiably relied" on Defendant's and Kooi Law's representations in extending the funds and would not have executed the Loan Agreement and extended the funds to Kooi Law if

Defendant had provided accurate disclosures. As a result of Defendant's actions, the Complaint asserts that Plaintiffs have been harmed in the amount of not less than $624,292.91.

Defendant argues that Plaintiffs fail to state a nondischargeability claim under § 523(a)(2) because the Complaint does not plead fraud with particularity; does not adequately allege scienter, reliance, or causation; and improperly blurs the distinct requirements of §§ 523(a)(2)(A) and 523(a)(2)(B). Defendant further contends that the alleged misrepresentations concerning the settlement of the Rairigh Case, undisclosed debts and defaults, pending or threatened litigation, other entity involvement, and work-in-progress projections are either conclusory, insufficiently particularized, not shown to have been false when made, or not actionable as fraud. Plaintiffs responded that the Complaint sufficiently identified the "who, what, when, where, and how" of the alleged fraud, including Defendant's written applications, loan documents, Guaranty, and WIP Report information, and that those allegations plausibly support falsity, intent to deceive, reliance, and causation under both §§ 523(a)(2)(A) and 523(a)(2)(B). In reply, Defendant maintains that Plaintiffs' opposition does not cure the Complaint's alleged deficiencies because it relies on post hoc characterizations rather than particularized allegations showing why the statements were false when made, what Defendant knew at the time, and how Plaintiffs relied on the alleged misstatements in their underwriting decision.

In Count II, Plaintiffs object to the dischargeability of the Bridgehead Debt pursuant to 11 U.S.C. § 523(a)(4) asserting that Defendant and Kooi Law were to hold the case proceeds in trust for the benefit of BHF and owed a duty to Plaintiffs to protect and remit case proceeds and not to diminish or deplete those funds. Through their actions, Plaintiffs assert that Defendant breached his duty and committed defalcation while acting in a fiduciary capacity

by failing to remit case proceeds to Plaintiffs. Defendant argues that Plaintiffs' § 523(a)(4) claim should be dismissed because the parties' relationship was an arm's-length secured lending relationship, not an express or technical trust giving rise to fiduciary capacity, and because the Complaint does not plead defalcation with sufficient specificity. In their Objection, Plaintiffs consent to dismissal of Count II, which asserts nondischargeability under § 523(a)(4), but request dismissal without prejudice. Defendant, in the Reply, argues that Plaintiffs consented to dismissal and did not substantively respond to his arguments on Count II; therefore, it should be dismissed with prejudice.

Lastly, in Count III, Plaintiffs object to the dischargeability of the Bridgehead Debt pursuant to 11 U.S.C. § 523(a)(6), claiming that Defendant willfully and maliciously harmed Plaintiffs by, among other things, (a) causing Kooi Law to take on additional debt without Plaintiffs' consent and in violation of the Loan Agreement, (b) purposefully dissolving Kooi Law and transferring assets securing the loan to evade the obligations owed to Plaintiffs, and (c) purposefully transferring or abandoning legal cases without notice to Plaintiffs. The Complaint asserts that Defendant knew that his actions would result or had a substantial certainty of resulting in injury or causing harm to Plaintiffs.

In response, Defendant argues that the § 523(a)(6) claim fails because the Complaint alleges, at most, breach of contract and business restructuring—not a willful and malicious injury undertaken with the intent to injure Plaintiffs or their property. As elaborated in the Reply, Defendant disputes Plaintiffs' characterization of Defendant's actions, asserting that the alleged conduct reflects the winding down of a failing law practice, that Plaintiffs have not alleged facts showing specific intent to injure, and that failure to pay or remit proceeds under the loan documents does not transform a contract dispute into a nondischargeability

claim under § 523(a)(6). Plaintiffs respond that the Complaint alleges more than nonpayment: it alleges a deliberate course of conduct involving misrepresentations, dissolution and reformation of entities, diversion or retention of collateral and case proceeds, and interference with Plaintiffs' security interests, from which willful and malicious injury may plausibly be inferred. In reply, Defendant contends that his payment history on the loan is inconsistent with an intent or scheme to defraud at the time of the application.

Each of the Counts raised in the Complaint are analyzed in turn below.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the facts alleged in a complaint must be sufficient "to raise a right to relief above the speculative level" and state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts apply a two-part test to determine whether a claim should be dismissed under Rule 12(b)(6): First, the Court must accept all the complaint's well-pleaded facts as true and view them in the light most favorable to the non-moving party—here the Plaintiffs. Second, the Court must determine "whether facts cited in support of each claim demonstrate that the plaintiff may plausibly be entitled to relief." *Hayes v. Total Equip. & Rental of El Paso (In re Applied Mach. Rentals, LLC)*, No. 23-30461, Adv. No. 25-03074, 2026 WL 192608, *3 (Bankr. W.D.N.C. Jan. 23, 2026).

The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Nationwide Judgment Recovery, Inc. v. Tyndall (In re Tyndall)*, No. 23-02014-5, Adv. No. 23-00094-5, 2024 WL 973469, *2 (Bankr. E.D.N.C. Mar. 6, 2024). Although the plausibility standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, it does require a plaintiff to demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (noting that a complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'"). Simply stated:

> 'Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible,' and '[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.'
>
> Thus, '[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.'

*Applied Mach.*, 2026 WL 192608, at *3 (quoting *In re Tops Holding II Corp.*, 646 B.R. 617, 646-47 (Bankr. S.D.N.Y. 2022)).

The legal sufficiency of a complaint is measured by whether it meets the standards for a pleading set forth in Rule 8, which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[7] *See In re Harley*, No. 25-02176, Adv. No. 25-80056, 2026 WL 1723661, at *3 (Bankr. D.S.C.

[7] Rule 8 is made applicable in this proceeding pursuant to Fed. R. Bankr. P. 7008.

June 12, 2026) (noting the Supreme Court's two-prong approach to test the sufficiency of a complaint: (1) it must contain factual allegations in addition to legal conclusions and (2) it must contain sufficient factual matter to state a plausible claim for relief). While Rule 8 was historically understood to embody a "notice pleading" standard, the Supreme Court has since refined that standard by requiring pleadings to satisfy a plausibility threshold. The Supreme has emphasized that a complaint must contain more than mere "labels and conclusions," explaining that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" as required by Rule 8.

*Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 679). *See also United States ex rel. Cobb v. Charleston Cnty. Sch. Dist.*, No. 9:25-CR-08752, 2026 WL 1830950 (D.S.C. Jun. 25, 2026).

Although Rule 8 sets the baseline pleading standard, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9, which applies in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7009. Rule 9(b) requires that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy the heightened pleading standard for fraud, courts have found that a plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as

the identity of the person making the misrepresentation and what he . . . obtained thereby." *Harley*, 2026 WL 1505108, at *2 (quoting *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 106 (4th Cir. 2025)). In other words, Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *United States v. Walgreen Co.*, 78 F.4th 87, 92 n.4 (4th Cir. 2023); *Weaver v. Hartman (In re Hartman)*, No. 18-bk-00444, Adv. No. 18-ap-00054, 2019 Bankr. LEXIS 3029, at *9 (Bankr. N.D.W. Va. Sep. 27, 2019) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). These particularity requirements ensure that a defendant has sufficient information to formulate a defense, protect against frivolous fraud claims, and prevent plaintiffs from relying on discovery to supply facts that should have been pleaded in the first instance. *Progressive N. Ins. Co. v. Mitchell*, No. 9:20-cv-673, 2021 WL 914456, at *3 (D.S.C. Mar. 10, 2021); *R.L. Mlazgar Assocs., Inc. v. HLI Sols., Inc.*, No. 6:22-cv-04729, 2025 WL 2224039, *4 (D.S.C. Aug. 5, 2025) (noting that Rule 9(b) serves multiple purposes: "(1) to put defendants on notice so that they have sufficient information to formulate a defense; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions in which all facts are learned after discovery; and (4) to protect defendants from harm to their goodwill and reputation.") (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Notwithstanding the demanding standard imposed by Rule 9, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *TTI Consumer Power Tools Inc. v. Engineered Plastic Components Inc.*, No. 8:22-cv-04085, 2024

WL 4277754, *7 (D.S.C. Sept. 24, 2024)) (quoting *Harrison*, 176 F.3d at 784); *Harley,* 2026 WL 1505108, at *2; *In re Abell*, 549 B.R. 631, 647 (Bankr. D. Md. 2016).

## II. COUNT I - 11 U.S.C. § 523(A)(2)

In Count I of the Complaint, Plaintiffs cite 11 U.S.C. § 523(a)(2) generally, without identifying or distinguishing between its two subsections, even though each requires materially different allegations.

Section 523(a)(2)(A) excepts from discharge a debt obligation "to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a). An actionable claim pursuant to § 523(a)(2)(A) requires a plaintiff to allege that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation with the intent to deceive or defraud the creditor; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged as a proximate result of the false representation. *See Colombo Bank v. F.S.B. v. Sharp*, 477 B.R. 613 (D. Md. 2008); *aff'd sub nom.*, *In re Sharp*, 340 F. App'x 899 (4th Cir. 2009) (unpublished per curiam opinion); *Tri-State Surgical Supply v. McKinnon (In re McKinnon)*, 653 B.R. 821, 828 (Bankr. D.S.C. 2023); *In re Goodwich*, 517 B.R. 572, 586 (Bankr. D. Md. 2014); *Harley*, 2026 WL 1723661, at *2; *Thompson v. Ollis (In re Ollis)*, No. 20-02775, Adv. No. 20-80077, 2021 WL 3411434, at *4 (Bankr. D.S.C. Aug. 4, 2021); *First Citizens Bank and Trust v. Malone (In re Malone)*, No. 10-02470, Adv. No. 10-80099, 2010 WL 5437248, at *5 (Bankr. D.S.C. Oct. 4, 2010); *In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999). Specifically,

§ 523(a)(2)(A) does not apply if the disputed statement is "respecting the debtor's insider financial condition."[8]

On the other hand, § 523(a)(2)(B) was designed to bar a debtor from receiving a discharge of a debt obligation incurred as a result of a false written statement. To satisfy subsection (2)(B), a creditor must prove the following elements:

> Use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. §523(a)(2)(B).

As the Supreme Court explained, § 523(a)(2) contains two closely related exceptions to discharge:

> One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.

*Field v. Mans*, 516 U.S. 59, 66 (1995). The subsections are mutually exclusive. *Goodwich*, 517 B.R. at 591; *Harley*, 2026 WL 1723661, at *4. The sections not only differ in terms of the factual situations they address, but they are also distinct with respect to the element of reliance: Whereas subsection (2)(A) requires the creditor to prove "justifiable reliance,"

[8] For purposes of this case, the Court notes that 11 U.S.C. § 101(31) provides that if the debtor is an individual—as the case here—the term "insider" includes a "corporation of which the debtor is a director, officer or persona in control." Thus, it appears that Kooi Law would fall under that definition.

subsection (2)(B) mandates "reasonable reliance"—a more demanding showing. 11 U.S.C. § 523(a)(2)(A)-(B).

Courts disagree as to whether the sufficiency of a claim under § 523(a)(2) is governed by a heightened pleading standard. *In re Zering*, 560 B.R 671 (Bankr. M.D.N.C. 2016). In *Zering*, the bankruptcy court examined the differing approaches taken by courts within the Fourth Circuit, ranging from decisions holding that the heightened pleading requirements of Rule 9(b) generally apply to nondischargeability actions under § 523(a)(2), to decisions concluding that Rule 9(b)'s stricter standard applies only to allegations of "actual fraud," and not to claims based on false pretenses or false representations. *Id.* at 676-77. Even after the decision in *Zering,* the issue does not appear settled. *Compare Gordon v. Etheridge (In re Etheridge)*, No. 19-02008, Adv. No. 19-02008, 2019 WL 6726832, at *17 (Bankr. M.D.N.C. 2019) (noting that Rule 9(b) applies to actions to except a debt from discharge under section 523(a)(2)); *Pearsall v. Hurd (In re Hurd)*, No. 3:24-bk-30110, Adv. No. 3:24-ap-03004, 2025 WL 972402 (Bankr. S.D.W. Va. March 26, 2025); *Harley*, 2026 WL 1505108, at *2 ("Whether brought under § 523(a)(2)(A) or (B), Plaintiff must plead, with particularity: the who, what, when, where, and how of the misrepresentation; intent to deceive; the applicable reliance standard (i.e. justifiable under subsection (A), reasonable under subsection (B)); and proximate loss."), *with Tyndall*, 2024 WL 973469, at *3 (noting that the scienter or intent element can be plead more generally).

In *Tyndall*, the Court dismissed a § 523(a)(2)(A) cause of action for failure to meet the particularity requirements but included a thorough explanation of what constitutes a sufficient pleading for a cause of action sounding in fraud under § 523(a)(2)(A). In so doing, the court in *Tyndall* relied on the Supreme Court's decision in *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S.

355, 360 (2016), noting that "[a]lthough the Supreme Court has declined to adopt an all-encompassing definition of actual fraud, it points out that 'actual fraud has two parts: actual and fraud'" and "[t]he word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involve[s] moral turpitude or intentional wrong.'" *Tyndall*, 2024 WL 973469, at *2. *Tyndall* concluded:

> [F]or purposes of Rules 12(b)(6) and 9(b) analysis, if the perpetrator's activity counts as "fraud" and wrongful intent can rationally be glea[n]ed from *particular* facts set out in the pleadings, "actual fraud" is presented. However, this necessary element of intent or scienter, normally being a state of mind existing inside the defendant, is a difficult element to prove, and that portion of the pleadings may be pled in generality. A defendant is highly unlikely to admit to intentional wrong-doing, and instead rest behind a mask of silence in the early stages of the case. Rule 9(b) acknowledges this tension, providing that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Because direct proof of intent is seldom available, the court in a dischargeability proceeding may infer the debtor's intent or lack of intent from the surrounding facts and circumstances."

*Tyndall*, 2024 WL 973469, *2-3 (citations omitted).

As currently pleaded, the Complaint conflates the two subsections in a manner that renders it insufficiently definite. It provides:

> The Settled Case Advanced Fee Application, Loan Application, Loan Agreement and Guaranty, 2024 Kooi Law Firm WIP Report, and First Amendment contained information and representations made by the Defendant *in writing* regarding the Defendant's and his law firm's financial condition which were materially false and were provided by Defendant to intentionally deceive Plaintiffs and induce them to lend money to Defendant's law firm.

Compl. ¶ 109 (emphasis added). As drafted, this allegation describes representations made (1) in writing and (2) regarding Defendant's and his law firm's financial condition—the precise hallmarks of a claim under § 523(a)(2)(B). Yet, the Complaint simultaneously invokes language associated with § 523(a)(2)(A) such as alleging that "Plaintiffs *justifiably relied* on

the Defendant's and his law firm's representations and would not have entered into the Loan and Security Agreement." *See* Compl. at ¶ 116 (emphasis added).

The operative pleading standard requires Plaintiffs to include, at a minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the failure to identify the specific basis on which a creditor objects to the dischargeability of a debt under § 523(a)(2) may not, in every instance, constitute a fatal defect under Fed. R. Civ. P. 8, *see Harley*, 2026 WL 1723661, at *4, here, the Court concludes that the Complaint should clarify the subsection or subsections under which each alleged misrepresentation is asserted. To be clear, the Court disagrees with Defendant's assertions that the Complaint does not plead with sufficient particularity the "who, what, when, where, and how" of the alleged false statements or the scienter or intent behind the misrepresentations. However, to the extent Count I rests—or should rest—on § 523(a)(2)(B), the Complaint does not adequately plead that Plaintiffs "reasonably" relied on the false statement. As previously stated, in fact, the difference—while subtle at first blush—is significant given that "reasonable reliance" imposes a more demanding standard than that applicable to the issue of justifiable reliance. Clarifying the allegations as they pertain to each subsection of § 523(a)(2) is necessary for the Court and Defendant to assess whether the applicable elements are met and provide Defendant with fair notice of the specific claim to be defended.[9]

[9] The Court does not hold that the Complaint fails to adequately plead reliance—whether justifiable or reasonable. The Complaint alleges that Plaintiffs required Defendant to complete written applications specifically because they intended to rely on the information provided in making their lending decisions, the Loan Application that Defendant signed expressly stated that Bridgehead Capital could rely on the information contained therein in all respects, and, as Plaintiffs allege, the information Defendant concealed as well as the true status of the Rairigh Case settlement was not discoverable through publicly available sources or through reasonable investigation at the time the loan was made. *See* Compl. at ¶¶ 59-72; 110; Obj. at 16. Whether the steps that Plaintiffs took ultimately justify the objective or subjective standards required by those two standards is an issue that will be developed at later stages of this proceeding. Regardless, the Complaint in its current form

The Court does not conclude that this deficiency is incurable. Plaintiffs have requested leave to amend to address any deficiency. Accordingly, Count I should be amended to (a) clearly identify the subsection or subsections of § 523(a)(2) under which the alleged misrepresentations are asserted and (b) clarify the circumstances supporting the applicable reliance standard for each such subsection.

## III. COUNT II - 11 U.S.C. § 523(A)(4)

Defendant devotes six pages of the Motion to Dismiss to arguing that Count II should be dismissed with prejudice, asserting that the Complaint fails to plausibly allege the existence of an express or technical trust, fails to plead defalcation with sufficient specificity, and alleges, at most, a breach of contract rather than defalcation. In their Objection, Plaintiffs do not address or rebut any of these arguments; instead, they merely state that they consent to dismissal without prejudice.

"In general, absent a contrary intention, a dismissal for failure to state a claim is with prejudice," as "'[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.'" *Mueller v. Specialized Loan Servicing, LLC*, 669 F. App'x 644, 644 (4th Cir. 2016) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)); *see also Babakaeva v. PTR Invs., Inc.*, No. 22-1272, 2022 WL 17103767, at *1 (4th Cir. Nov. 22, 2022) (concluding that dismissal of action with prejudice without leave to amend did not constitute reversible error where the record showed that appellants' requests for leave to amend were perfunctory). Whether to dismiss for failure to

conflates two distinct and mutually exclusive subsections of § 523(a)(2), making it difficult to discern both the relief sought and the applicable legal standards to be applied.

state a claim with prejudice is within the discretion of the Court. *In re Jasper Pellets, LLC*, 652 B.R. 262, 275 (Bankr. D.S.C. 2023) (citing *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985)).

Here, Plaintiffs have failed to defend the viability of their cause of action for nondischargeability under 11 U.S.C. § 523(a)(4). Plaintiffs do not address any of the arguments raised in the Motion concerning Count II, nor do they request leave to amend the Complaint as to Count II. Moreover, the deadline for commencing an adversary proceeding to determine the dischargeability of a debt expired months ago. Plaintiffs neither sought nor obtained an extension of that deadline before its expiration; instead, they commenced this adversary on the last permissible date. Accordingly, Plaintiffs cannot revive or otherwise pursue a § 523(a)(4) action at a later date. Because any subsequent § 523 action would be time-barred, and for the additional reasons discussed herein, Count II is dismissed with prejudice.

## IV. COUNT III - 11 U.S.C. § 523(A)(6)

Section 523(a)(6) prohibits the discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[Section] 523(a)(6) applies only to acts done with the actual intent to cause injury . . . [and] is not satisfied by negligent, grossly negligent or reckless conduct." *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006). As the Fourth Circuit has noted, the word "willful" modifies the word "injury"; thus "indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Choi v. Hyon*, No. 22-2240, 2023 WL 7381547, at *1 (4th Cir. Nov. 3, 2023) (emphasis in original) (quoting

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). For purposes of § 523(a)(6), "willful" has been defined as requiring "deliberate or intentional acts, while 'malicious' refers to acts that are wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Whitley v. Donnell (In re Donnell)*, No. 16-05131, Adv. No. 17-80049, 2018 WL 4354368, at *7 (Bankr. D.S.C. Sept. 11, 2018) (internal quotations omitted) (citing cases). "Acts that are generally negligent, grossly negligent, or reckless do not necessarily satisfy the requirements of § 523(a)(6)." *In re Kaufmann*, 669 B.R. 164, 172 (Bankr. D.S.C. 2024). Moreover, "[s]imple breach of contract . . . even if intentional, would not give rise to a Section 523(a)(6) violation." *McKinnon*, 653 B.R. at 832 (citing *Ocean Equity Grp., Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010)).

As the Fourth Circuit has summarized,

> The Supreme Court and this court have decided that a debt arising from an injury attributable to mere negligent or reckless conduct does not satisfy the "willful and malicious" requirement of (a)(6); in addition, it is not enough that the conduct underlying the injury was intentional. Rather, the debtor must have engaged in such conduct with the actual intent to cause injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006).

*In re Muhs*, 923 F.3d 377 (4th Cir. 2019). *See also In re Yin*, 643 B.R. 855, 864 (Bankr. E.D. Va. 2022) ("The Fourth Circuit has concluded that an injury may be found to be willful 'only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result.'") (quoting *In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003)); *In re Okeiyi*, 664 B.R. 226 (Bankr. M.D.N.C. 2024) (same); *In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015) (same).

To determine whether the debtor's conduct was "willful," the Court looks to the debtor's subjective state of mind; and to determine "malice," the Court may imply malice

through "the acts and conduct of the debtor in the context of the surrounding circumstances." *Whitley v. Donnell (In re Donnell)*, No. 16-05131, Adv. No. 17-80049, 2018 WL 4354368, at *7 (Bankr. D.S.C. Sept. 10, 2018) (quoting *First Nat'l Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 668 (4th Cir. 1995)).

In the Motion, Defendant advances four principal arguments: (1) the Complaint fails to adequately plead intent to cause injury; (2) the conduct Plaintiffs characterize as a "scheme" consists merely of ordinary business restructuring activities; (3) conduct occurring after default cannot establish fraudulent intent existing at the time the loan was made; and (4) the Complaint improperly conflates a breach of contract with an intentional tort. The Court is not persuaded by these arguments. Accepting Plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor, the Court finds that the Complaint plausibly alleges a claim for nondischargeability under § 523(a)(6).

The Complaint alleges a course of conduct that, if proven, could constitute a deliberate and intentional injury to Plaintiffs' secured property interests, including the alleged diversion and personal retention of case proceeds in which Plaintiffs held a perfected security interest. Such allegations go beyond a mere breach of contractual obligation. The Complaint further sets forth facts from which the requisite willfulness and malice may plausibly be inferred. As Plaintiffs aver, Defendant is a licensed attorney who operated Kooi Law for over a decade and executed the Loan Agreement with knowledge of Kooi Law's debts and Plaintiffs' security interest in case proceeds. Moreover, as asserted in the Complaint, Defendant made affirmative assurances on or after he and Kooi Law defaulted on the loan, as of July 7, 2025, that his debts were "small and manageable," that his firm's current case list stood at fifty-seven cases, that there were twenty-two more he was working to obtain, and that he anticipated having several

cases resolved soon with payments to be made to Plaintiffs. *See* Compl. at ¶ 81. According to Plaintiffs, these assurances were made approximately one week after Defendant caused the formal dissolution of Kooi Law on June 30, 2025. Kooi Law's reported case inventory allegedly plummeted from more than 318 active cases with projected payouts approaching $10 million in July 2024, as reported in the WIP Report, to only nine cases by August 2025, without any accounting to Plaintiffs for that reduction. Moreover, as the Complaint asserts, Defendant admitted at his § 341 meeting of creditors to having personally retained and settled workers' compensation cases without remitting proceeds.

From the outset, the Court notes that, although the Fourth Circuit has not addressed the issue directly, courts have held that nondischargeability claims pursuant to 11 U.S.C. § 523(a)(6) are not subject to the heightened requirements of Rule 9(b).[10] *See, e.g., In re Kilroy*, 354 B.R. 476, 489 (Bankr. S.D. Tex. 2006); *Bailey v. Amaro (In re Amaro)*, No. 20-80051, Adv. No. 20-96021, 2020 WL 6929467, at *4 (Bankr. N.D. Ill. Sept 11, 2020). Willfulness requires proof of a deliberate or intentional act to cause injury. As noted above, Rule 9(b) expressly acknowledges that intent or scienter, involving a state of mind, are difficult elements to plead with specificity in the early stages of the case, thus allowing for "malice, intent, knowledge, and other conditions of a person's mind" to be alleged generally. *See* Fed. R. Civ. P. 9(b). The Court finds that the Complaint contains sufficient factual allegations that Defendant dissolved various entities without Plaintiffs' knowledge or consent while, at the same time, transferring the law firm's goodwill and business operations to a newly formed entity. Although Defendant contends that the Complaint fails to distinguish his conduct from legitimate business measures undertaken in response to financial distress, the

[10] The Court also notes that Defendant does not appear to be claiming that the heightened pleading requirements of Rule 9(b) apply to Count III.

allegations, viewed in the light most favorable to Plaintiffs, suggest otherwise. The Complaint characterizes Defendant's conduct as deliberate rather than negligent or inadvertent and alleges that Defendant acted with knowledge that his actions would cause injury to Plaintiffs or had a substantial certainty of resulting in injury or causing harm.

Lastly, Defendant argues that Plaintiffs rely heavily on Defendant's conduct after Kooi Law defaulted as evidence of willful and malicious injury. Because these events occurred in 2025 and early 2026—after the May 2024 Loan Application was submitted and after Defendant and Kooi Law defaulted on the loan—Defendant argues the "[c]onduct occurring after default cannot retroactively transform pre-loan representations into fraudulent inducement." *See* Reply at 32. It is not entirely clear to the Court how this argument would support the relief Defendant seeks and no caselaw was cited in support. In any event, the Court finds the argument unpersuasive for purposes of this Motion. Plaintiffs allege that after obtaining the loan, Defendant systematically removed assets from Plaintiff's reach. The Loan Agreement obligated Kooi Law to remit a percentage of all case proceeds received and to hold case proceeds in trust for the benefit of BHF. As asserted in the Complaint, Defendant admitted to personally retaining some workers' compensation cases that previously belonged to Kooi Law and settled a couple of them without remitting the proceeds to Plaintiffs. Moreover, the Complaint further alleges that Defendant transferred or abandoned legal cases without notice to Plaintiffs or payment of proceeds. This conduct, if proven, may support a claim of conversion which has been found by courts to constitute a willful and malicious injury to property for the purposes of § 523(a)(6). *Twin City Fire Ins. Co. v. Estrin (In re Estrin)*, No. 14-04795, Adv. No. 15-80039, 2016 WL 691506, at *15 (Bankr. D.S.C. 2016) ("Courts have often found that conversion constitutes a willful and malicious injury for

purposes of section 523(a)(6)."); *In re Wooten*, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (same).

Whether Defendant's conduct ultimately rises to the level of willful and malicious injury within the meaning of § 523(a)(6) is a question that cannot be resolved on the pleadings and must await further factual development. For purpose of determining sufficiency at the pleading stage, the Court finds that the Complaint adequately alleges a cause of action under 11 U.S.C. § 523(a)(6).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. The Motion to Dismiss Complaint to Determine Dischargeability of Debt is **GRANTED IN PART** as to **Count I**. Plaintiffs shall have fourteen (14) days from the date of entry of this Order to file an amended complaint as to Count I to address the deficiencies and inconsistencies raised herein. Failure to timely file an amended complaint may result in dismissal of Count I with prejudice without further notice.
2. The Motion is **GRANTED** as to **Count II** (11 U.S.C. § 523(a)(4)). Count II of the Complaint is **dismissed with prejudice**.
3. The Motion is **DENIED** as to **Count III** (11 U.S.C. § 523(a)(6)).
4. Upon timely filing and service of an amended complaint, Defendant shall file his responsive pleading within fourteen (14) days of service of the amended complaint as to both Count I and Count III. To the extent no amended complaint is filed by

the deadline imposed herein as to Count I, Defendant shall file its responsive pleading as it related to Count III within fourteen (14) days after such deadline (i.e., twenty-eight (28) days from the date of entry of this Order).

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/18/2026**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

Entered: 08/18/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina