**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Jeffrey Ryan Kooi,<br><br>Debtor(s). | C/A No. 26-00159-EG<br><br>Adv. Pro. No. 26-80021-EG<br><br>Chapter 7 |
| Bridgehead Legal Capital, LLC<br>BHF I, LLC,<br><br>Plaintiff(s),<br><br>v.<br><br>Jeffrey Ryan Kooi,<br><br>Defendant(s). | **ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT** |

**THIS MATTER** is before the Court on the Motion to Dismiss Counts I, II, and III of Amended Complaint (the "Motion") filed by Defendant Jeffrey Ryan Kooi ("Defendant" or "Debtor") on September 18, 2026.[1] The Court entered a scheduling order on September 21, 2026 setting a deadline for responses or objections to the Motion and indicating that a hearing may be set after the expiration of the objection deadline if necessary.[2] Plaintiffs Bridgehead Legal Capital, LLC ("Bridgehead Capital") and BHF I, LLC ("BHF" and, collectively with Bridgehead Capital, "Plaintiffs") filed an Objection to the Motion on September 29, 2026. Although the Court did not contemplate the filing of any pleadings aside an objection, Defendant filed a Reply in Support of the Motion on October 5, 2026.[3] Following a thorough review of the pleadings filed, the Court finds that a hearing is not necessary to decide the Motion.

[1] ECF No. 27.
[2] ECF No. 28.
[3] ECF No. 33.

This is the Defendant's second Motion to Dismiss in this adversary proceeding. The Court previously addressed Defendant's initial Motion to Dismiss[4] Complaint[5] in an Order on Motion to Dismiss Complaint on August 18, 2026 ("Prior Order")[6] and provided the Plaintiff the opportunity to amend the Complaint as to the cause of action based on 11 U.S.C. § 523(a)(2) to clarify the subsection or subsections under which each alleged misrepresentation was asserted. In the present Motion, Defendant advances several grounds for dismissal, including arguments previously presented to and addressed by the Court in its Prior Order,[7] as well as additional arguments that were not previously raised. To the extent Defendant's renewed arguments seek to revisit issues addressed in the Prior Order, the Court declines to revisit them. As to the newly raised arguments, the Court concludes that they do warrant dismissal at this stage of the proceedings. The purpose of a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the pleadings, not to resolve disputed factual questions or determine the ultimate merits of the parties' claims. The Court recognizes Defendant's vigorous advocacy in challenging the sufficiency of the Complaint and Amended Complaint and has carefully considered the arguments advanced. Nevertheless, having previously determined that the essential causes of action were adequately pleaded and having afforded Plaintiffs an opportunity to amend for limited purposes, the Court concludes that the causes of action should be allowed to proceed beyond the pleading stage. The parties will have the opportunity to develop and test the factual and legal issues through discovery and, if warranted, subsequent dispositive motions, consistent with the efficient resolution of this matter. The parties shall move forward with the proceeding so that the factual and legal issues underlying Plaintiffs' claims may be developed and resolved on an appropriate

[4] ECF No. 13, filed June 22, 2026.
[5] ECF No. 1.
[6] ECF No. 19.
[7] *Id.*

record, with due regard to the efficient use of judicial resources and the avoidance of unnecessary litigation expense. For the reasons set forth herein, the Motion is denied as to all counts in the Amended Complaint.

## BACKGROUND AND ALLEGATIONS IN THE AMENDED COMPLAINT

The background and allegations of the Original Complaint were fully set forth in the Prior Order and are incorporated herein by reference. For expediency, some of the factual background is repeated here to the extent it is pertinent to the consideration of this Motion.

Debtor filed his chapter 7 petition and schedules on January 14, 2026. A deadline of April 27, 2026, was imposed to file objections to Debtor's discharge. Debtor's Schedule F lists Bridgehead Capital as an unsecured, noncontingent, liquidated, and undisputed creditor in the amount of $554,900.00 for a "business loan." On May 29, 2026, the Chapter 7 Trustee filed a Notice of Assets and Request for Notice to Creditors to File Claims.

Plaintiffs timely filed the initial complaint in this action on April 27, 2026 (the "Original Complaint"),[8] asserting that the debt Debtor owes them in an amount not less than $624,292.91 (the "Bridgehead Debt") is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). The Bridgehead Debt consists of a principal balance of $554,900.00 and accrued but unpaid interest of $69,392.91 calculated as of September 15, 2025. BHF filed a proof of claim in Debtor's bankruptcy case, C/A No. 26-00159-eg, asserting a claim of $670,475.80, and Bridgehead Capital filed a proof of claim asserting a contingent/unliquidated claim in an unspecified amount.[9]

---

[8] ECF No. 1.
[9] C/A No. 26-00159-eg, Proof of Claim Nos. 20-1 (BHF); 21-1 (Bridgehead Capital).

Defendant filed a prior Motion to Dismiss ("First Motion") on June 22, 2026.[10] The Court entered the Prior Order on August 18, 2026, granting Defendant's First Motion as to Count I (11 U.S.C. § 523(a)(2)) with leave to amend the Complaint, granting the motion as to Count II (11 U.S.C. § 523(a)(4)) and dismissing Count II with prejudice, and denying the motion as to Count III (11 U.S.C. § 523(a)(6)). Specifically as to Count I, the Court found that the Complaint was deficient because it cited 11 U.S.C. § 523(a)(2) generally, without identifying or distinguishing between its two subsections, even though each requires materially different allegations. As to Count I, the Court disagreed with Defendant's assertions that "the Complaint does not plead with sufficient particularity the 'who, what, when, where, and how' of the alleged false statements or the scienter or intent behind the misrepresentation" or that the Original Complaint "fails to adequately plead reliance." The Court, however, concluded that the Original Complaint should be amended to (a) clearly identify the subsection or subsections of § 523(a)(2) under which the alleged misrepresentations are asserted and (b) clarify the circumstances supporting the applicable reliance standard for each subsection. As to Count III, the Court found that the Complaint adequately alleged a cause of action under 11 U.S.C. § 523(a)(6).

Plaintiffs filed an Amended Complaint on August 28, 2026, alleging three causes of action for objection to dischargeability of debt: (1) Count I–pursuant to 11 U.S.C. § 523(a)(2)(A); (2) Count II–pursuant to 11 U.S.C. § 523(a)(2)(B); and (3) Count III–pursuant to 11 U.S.C. § 523(a)(6). The Amended Complaint includes three additional exhibits, Exhibit H, I and J, pertaining to the allegations regarding the Rairigh Case, as defined more fully below.[11] All the

[10] ECF No. 13

[11] The additional exhibits include the following documents which were filed in the Miami County Superior Court in connection with the Rairigh Case: Exhibit H, Verified Petition to Appoint Administrator for the Sole Purpose of Collecting Damages for a Wrongful Death Claim, filed on September 26, 2023; Exhibit I, Verified Petition to Compromise and Settle Wrongful Death Claim, filed on September 26, 2023; and Exhibit J, Order Appointing Personal Representative, filed on September 28, 2023.

facts set forth below are drawn from the Amended Complaint and are accepted as true for purposes of this Motion, as required by Federal Rule of Civil Procedure, which is made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012.

Plaintiffs are commercial lenders that provide financing to law firms throughout the United States. (Am. Compl. ¶ 11.) Bridgehead Capital is the manager for BHF, with fully delegated responsibility for overseeing BHF's business and managing its day-to-day operations. (Am. Compl. ¶ 12.) The Amended Complaint asserts that Defendant is an attorney licensed to practice law in Indiana and Illinois since November 2000 and was the founder, sole owner, managing member, officer and person in control of Kooi Law Firm, LLC ("Kooi Law"), an Indiana limited liability company formed in 2015. (Am. Compl. ¶¶ 14-15.) In 2008, Defendant formed another company, Kooi Investments, LLC ("Kooi Investments"), an Indiana limited liability company for which Defendant was similarly the sole member. (Am. Compl. ¶ 97.) Kooi Investments purchased the real property from which Kooi Law operated. (Am. Compl. ¶ 97.)

On or about May 6, 2024, Defendant sought funding for Kooi Law by submitting a "Settled Case Funding Application" (the "Initial Application") to Advanced Legal Capital, a third-party broker. (Am. Compl. ¶ 18.) The Initial Application represented that a settlement had been reached in connection with claims brought against Schneider Electric USA, Inc. f/k/a Square D by, among others, Renata Rairigh, Renata Rairigh as personal representative of the Estate of Gene Rairigh, Cory Rairigh, Jennifer Norman, and Lori VerBryck for which payment would be forthcoming to Kooi Law by September 2, 2024 (the "Rairigh Case"). (Am. Compl. ¶¶ 19-24.) Defendant made statements and representations to Plaintiffs indicating that the parties to the settlement understood that Defendant would still need to obtain probate court approval for the claims asserted by Renata Rairigh, as personal representative of the Estate of Gene Rairigh, before a settlement payment

would be made. (Am. Compl. ¶ 25.) Defendant further stated that due to a "very strong confidentiality clause" in the settlement documents, "it is imperative your underwriting process remains strictly confidential." (Am. Compl. ¶ 26.) The Initial Application, signed by Defendant, made various representations to Advanced Legal Capital and its affiliates, including as to the truthfulness of the information provided by the applicant and that "the Funder and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained" in the Initial Application. (Am. Compl. ¶ 27.)

On May 6, 2024, Defendant sent an email to a representative of Plaintiffs' broker, Advanced Legal Capital, stating: "In March of 2024, the parties (via a pre-suit mediation) resolved 48 cases including the attached settlement agreements . . ." (the "May 6th Email") and disclosed the amounts to be paid for resolution of the Rairigh Case. (Am. Compl. ¶ 115.) A copy of the settlement agreement (the "Settlement Agreement") for the Rairigh Case, dated April 2, 2024, was attached to the May 6th Email. (Am. Compl. ¶ 116.) Plaintiffs allege that the May 6th Email contained false representations about when the Rairigh Case was resolved through pre-suit mediation, the status of probate approval, and when an expected payout would occur. (Am. Compl. ¶ 133-136).

On or about May 7, 2024, Defendant also completed and submitted a loan application to Bridgehead Capital (the "Loan Application") on behalf of Kooi Law seeking up to $500,000.00 in funding. (Am. Compl. ¶ 29.) The Loan Application represented that neither Kooi Law nor any of its partners had judgments against them, were involved in pending or threatened litigation, or were members of other law firms or entities other than Kooi Law. (Am. Compl. ¶¶ 30-32.) Pursuant to the Loan Application, Defendant acknowledged that Bridgehead Capital could "rely upon the information contained in the application in all respects." (Am. Compl. ¶ 33.) Defendant further

confirmed in the Loan Application that "he reviewed all of the information submitted with this application and confirm that it is accurate and complete to the best of my knowledge." (Am. Compl. ¶ 34.)

On or about May 7, 2024, Plaintiffs pulled a personal credit report and background report on Defendant and performed a UCC search for Kooi Law (the "UCC Search") with the Indiana Secretary of State's office. (Am. Compl. ¶ 35.) Representatives of Plaintiffs also spoke directly with Defendant by telephone on May 9, 2024 (the "May 9th Call"), at which time Defendant reiterated he was expecting a payout under the Settlement Agreement within 180 days, but was waiting on probate court approval of the settlement before payments would be made under the Settlement Agreement. (Am. Compl. ¶¶¶ 36-37.)

Plaintiffs assert they received and relied upon Defendant's representations made in the Initial Application, the Loan Application, the oral statements Defendant made during the May 9th call, the Settlement Agreement, and other disclosures to determine whether to advance funds to Kooi Law. (Am. Compl. ¶ 38.) The Loan Application listed only three outstanding debt obligations owed by Kooi Law: (a) a $64,000.00 line of credit with Community First Bank of Indiana, (2) a $50,000.00 line of credit with National Bank of Indiana, and (3) an American Express card, which Defendant represented as "typically paid in full." (Am. Compl. ¶ 65.) Defendant also indicated in the Loan Application that neither Kooi Law nor any of its partners were involved in pending or threatened litigation. (Am. Compl. ¶ 31.)

The Amended Complaint alleges that Defendant omitted several pertinent debts from the Loan Application. First, Defendant failed to disclose in the Loan Application that, at the time the BHF loan documents were executed, Defendant had executed a promissory note in the amount of $535,921.02 to Bankers Healthcare Group ("BHG Loan"), along with an associated security

agreement, and the BHG Loan was outstanding at the time the Loan Application was completed, signed, and submitted by Defendant to Plaintiffs. (Am. Compl. ¶¶ 66-67.)

Second, Defendant did not disclose a $500,000.00 loan from the Small Business Administration (the "SBA Debt") to Kooi Law. (Am. Compl. ¶ 68.) The proof of claim filed by the SBA in Defendant's bankruptcy case on August 27, 2026, reveals that Kooi Law signed a promissory note in the amount of $355,800.00 on April 11, 2020, which was subsequently amended and increased to $500,000.00 on April 25, 2021.[12] (Am. Compl. ¶ 68.)

Third, Defendant did not disclose that Kooi Law also owed Orange Media Group in excess of $40,000.00 (the "OMG Debt") at the time Defendant completed and submitted the Loan Application. (Am. Compl. ¶ 69.) Plaintiffs were unaware of the existence of the OMG Debt and assert that information regarding this debt was not available through any public sources prior to BHF advancing funds to Kooi Law. The OMG Debt is further evidenced by Proof of Claim No. 9-1 filed in Defendant's bankruptcy case.[13]

Fourth, at the time Defendant completed the Loan Application, Defendant did not disclose and Plaintiffs were unaware that Kooi Law and Defendant were also indebted to NuDirection Lending, LLC ("NuDirection") in the approximate amount of $250,000.00. (Am. Compl. ¶¶ 73, 76.) Finally, the Amended Complaint asserts Defendant understated the obligation owed to the National Bank of Indiana in the Loan Application—disclosing it at $50,000.00 when the line of credit was up to $142,000.00. (Am. Compl. ¶ 188.)

Plaintiffs' UCC Search for Kooi Law revealed liens in favor of NuDirection and Newtek, but upon questioning Defendant via email on May 7, 2024, Defendant stated "NuDirection and Newtek are SBA loans that are actually with Kooi Investments (the LLC that owns my building).

[12] C/A No. 26-00159-eg, Proof of Claim No. 19-1.
[13] C/A No. 26-00159-eg, Proof of Claim No. 9-1.

We had an original loan and a remodel/construction loan." (Am. Compl. ¶ 74.) Plaintiffs allege, upon information and belief, that Defendant and Kooi Law were indebted to NuDirection at the time Defendant completed the Loan Application. (Am. Compl. ¶ 75.) According to Plaintiffs, the SBA Debt, the NuDirection loan, and the obligation to National Bank of Indiana were either in default as of May 2024 or legal proceedings had been threatened or initiated at the time Defendant signed and submitted the Loan Application. (Am. Compl. ¶¶ 72, 76, 78-81.) Plaintiffs aver that, had Defendant disclosed the existence of these outstanding loans, Plaintiffs would not have extended funding to Kooi Law. (Am. Compl. ¶¶ 71, 77, 79.)

Based on the disclosures and representations made in the Initial Application, the May 6th Email, the Loan Application, the Settlement Agreement, and the May 9th Call, Plaintiffs agreed to extend a loan to Kooi Law through BHF to fund the law firm's operational expenses. (Am. Compl. ¶¶ 39.) The parties executed a Loan and Security Agreement with an effective date of May 15, 2024 (the "Loan and Security Agreement"), whereby BHF agreed to loan Kooi Law $318,000.00. (Am. Compl. ¶ 40.) On July 27, 2024, the parties executed a First Amendment to Loan and Security Agreement (together with the Loan and Security Agreement, the "Loan Agreement") for an additional $236,900.00 in funding. (Am. Compl. ¶ 41.) Defendant also executed a Guaranty of Payment and Performance (the "Guaranty") in connection with the Loan Agreement, guaranteeing payment of all present and future obligations of Kooi Law and acknowledging that BHF would not be willing to execute the loan without the execution of the Guaranty. (Am. Compl. ¶¶ 44-45.) Pursuant to the Guaranty, Defendant took on all fiduciary obligations set forth in the Loan Agreement and promised not to allow or permit to be made any transfer of his interest in Kooi Law without first obtaining BHF's consent. (Am. Compl. ¶¶ 47-48.)

The Loan Agreement required Kooi Law to repay the loan in its entirety within five days of its receipt of proceeds from the Rairigh Case. (Am. Compl. ¶¶ 53.) Kooi Law was also obligated to pay BHF 15% of any fees or case proceeds received throughout the term of the Loan Agreement until the loan was paid in full. (Am. Compl. ¶ 54.)

On July 24, 2024, just a few days before the execution of the amendment, Defendant sent the president of Bridgehead Capital a document titled "Kooi Law Firm Work in Progress Report as of July 2024" (the "WIP Report"), listing 318 cases with aggregate expected payouts of approximately $9.9 million. (Am. Compl. ¶¶ 85-86.) Plaintiffs aver that the WIP Report falsely inflated the number and types of cases Kooi Law was working on and the expected aggregated payout to be received on account of those cases. (Am. Compl. ¶ 143.)

Plaintiffs assert they reviewed and relied upon Defendant's representations in the WIP Report, together with the representations made by Defendant in the Initial Application, the May 6th Email, the Loan Application, the Settlement Agreement, and May 9th Call before deciding whether to enter into the first amendment to the Loan Agreement and advancing an additional $236,900.00 to Kooi Law. (Am. Compl. ¶ 88.)

Plaintiffs allege that multiple representations were false. (Am. Compl. ¶¶ 30-37; 65-79; 176-191.) Among other things, Plaintiffs aver that at the time Defendant represented in the May 6th Email that the probate court would have to approve the Settlement Agreement before payment would occur, Defendant had already obtained probate court approval for settlement of the Rairigh Case on September 28, 2023. (Am. Compl. ¶ 121). On September 26, 2023, Defendant signed and filed a Verified Petition to Appoint Administrator for the Sole Purpose of Collecting damages for a Wrongful Death Claim as counsel for Rairigh in the probate court. (Am. Compl. ¶ 122.) That same day, Defendant also signed and filed a Verified Petition to Compromise and Settle

Wrongful Death Claim with the probate court. (Am. Compl. ¶ 123). A copy of the probate court's Order on Verified Petition to Compromise and Settle Wrongful Death Claim (the "Probate Court Order"), entered on September 28, 2023, is attached to the Amended Complaint as Exhibit I. (Am. Compl. Ex. I.)

Count I of the Amended Complaint asserts a cause of action seeking a determination of the nondischargeability of the debt owed to Plaintiffs pursuant to 11 U.S.C. § 523(a)(2)(A). It includes allegations that at the time Defendant made the representations in the May 6th E-Mail, signed the Initial Application, presented the Settlement Agreement, participated in the May 9th Call, signed the Loan and Security Agreement, and submitted the WIP Report, he was the sole member, officer and person in control of Kooi Law and knew his representations were false. (Am. Compl. ¶¶ 145-152.) Plaintiffs further allege that Defendant made the foregoing false representations with the intent to deceive Plaintiffs into believing that the anticipated payment to be made under the Settlement Agreement would be delayed pending approval from a probate court following a hearing. (Am. Compl. ¶¶ 153-157.) The Amended Complaint includes allegations that Plaintiffs justifiably relied on the representations because Defendant had represented in the Initial Application and the Loan Application that the information he provided was accurate and complete. (Am. Compl. ¶¶ 158-166.) Plaintiffs assert they confirmed that Defendant was a licensed member in good standing of the Indiana and Illinois bar associations prior to making the loan (Am. Compl. ¶ 159); they relied on Defendant's statements, as the founding member, sole owner, officer, and person in control of Kooi Law, about the status of the cases he and Kooi Law were actively working on (Am. Compl. ¶ 160-162); and they had no reason to verify the settlement with the probate court as they had been informed that it was recently settled and pending approval by the probate court and was also subject to a confidentiality agreement. (Am. Compl. ¶¶ 162-164.)

Plaintiffs allege that had they known that Defendant resolved the Rairigh Case and obtained court approval from the probate court in 2023—six (6) months prior to when he stated the pre-suit mediation even occurred and prior to the Settlement Agreement being signed—Plaintiffs would not have extended funds to Kooi Law. (Am. Compl. ¶ 165.) As a proximate result of Defendant's false representations that induced Plaintiffs into approving and BHF making the loan, which Defendant failed to repay, Plaintiffs allege they suffered harm. (Am. Compl. ¶¶ 172-173.)

Count II of the Amended Complaint asserts a cause of action seeking a determination of the nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2)(B). Plaintiffs allege that Defendant obtained the loan through his use of written statements in the Initial Application, May 6th E-mail, Settlement Agreement, Loan Application and WIP Report (the "Written Statements") that were materially false respecting Defendant's or Kooi Law's financial condition, upon which Plaintiffs reasonably relied, and that Defendant caused to be made or published with intent to deceive. (Am. Compl. ¶ 176.) Plaintiffs allege that they confirmed that Defendant was a member in good standing of the bar and conducted their own due diligence, "including, but not limited to, performing a credit and background check on Defendant, as well as the UCC Search." (Am. Compl. ¶ 203.) The Amended Complaint includes allegations that Plaintiffs reasonably relied on Defendant's written statements because he had firsthand knowledge regarding his own and Kooi Law's financial condition and the Settlement Agreement limited the amount of additional due diligence Plaintiffs could perform to verify Defendant's written statements. (Am. Compl. ¶¶ 201-203, 211-212.) Plaintiffs further allege that Defendant caused the written statements to be published with intent to deceive for purposes of obtaining an extension of credit from Plaintiffs and receiving a loan. (Am. Compl. ¶¶ 213-214.) As part of the allegations in Count II, Plaintiffs state:

> Although some or all of the Defendant's Written Statements were referenced in the Plaintiff's First Cause of Action above, these same documents are referenced in Plaintiff's Second Cause of Action to the extent the Court determines that any or all of them are statements in writing respecting the Defendant's or Kooi Law's financial condition.

(Am. Compl. ¶ 177.)

Count III of the Amended Complaint is a cause of action for objection to dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6). The allegations of the Amended Complaint for this cause of action are identical to those included in the Complaint, which the Court previously determined sufficiently state a claim under § 523(a)(6) in the Prior Order.

## <u>DISCUSSION AND CONCLUSIONS OF LAW</u>

### I. STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the facts alleged in a complaint must be sufficient "to raise a right to relief above the speculative level" and state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts apply a two-part test to determine whether a claim should be dismissed under Rule 12(b)(6): First, the Court must accept all the complaint's well-pleaded facts as true and view them in the light most favorable to the non-moving party—here the Plaintiffs. Second, the Court must determine "whether facts cited in support of each claim demonstrate that the plaintiff may plausibly be entitled to relief." *Hayes v. Total Equip. & Rental of El Paso (In re Applied Mach. Rentals, LLC)*, No. 23-30461, Adv. No. 25-03074, 2026 WL 192608, *3 (Bankr. W.D.N.C. Jan. 23, 2026).

The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Nationwide Judgment Recovery, Inc. v. Tyndall (In re Tyndall)*, No. 23-02014-5, Adv. No. 23-00094-5, 2024 WL 973469, *2 (Bankr. E.D.N.C. Mar. 6, 2024). Although the plausibility standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, it does require a plaintiff to demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (noting that a complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'"). Simply stated:

> 'Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible,' and '[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.'
>
> Thus, '[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.'

*Applied Mach.*, 2026 WL 192608, at *3 (quoting *In re Tops Holding II Corp.*, 646 B.R. 617, 646-47 (Bankr. S.D.N.Y. 2022)).

The legal sufficiency of a complaint is measured by whether it meets the standards for a pleading set forth in Rule 8, which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);[14] *see In re Harley*, No. 25-02176, Adv. No. 25-80056, 2026 WL 1723661, at *3 (Bankr. D.S.C. June 12, 2026) (noting the Supreme Court's two-prong approach to test the sufficiency of a complaint: (1) it must contain factual allegations in addition to legal conclusions and (2) it must contain sufficient factual matter to state a plausible claim for relief). While Rule 8 was historically

[14] Rule 8 is made applicable in this proceeding pursuant to Fed. R. Bankr. P. 7008.

understood to embody a "notice pleading" standard, the Supreme Court has since refined that standard by requiring pleadings to satisfy a plausibility threshold. The Supreme has emphasized that a complaint must contain more than mere "labels and conclusions," explaining that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" as required by Rule 8.

*Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 679); *see also United States ex rel. Cobb v. Charleston Cnty. Sch. Dist.*, No. 9:25-CR-08752, 2026 WL 1830950 (D.S.C. Jun. 25, 2026).

Although Rule 8 sets the baseline pleading standard, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9, which applies in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7009. Rule 9(b) requires that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy the heightened pleading standard for fraud, courts have found that a plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he . . . obtained thereby." *Harley*, 2026 WL 1505108, at *2 (quoting *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 106 (4th Cir. 2025)). In other words, Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *United States v. Walgreen Co.*, 78 F.4th 87, 92 n.4 (4th Cir. 2023); *Weaver v. Hartman (In re Hartman)*, No. 18-bk-00444, Adv. No. 18-ap-00054,

2019 Bankr. LEXIS 3029, at *9 (Bankr. N.D.W. Va. Sep. 27, 2019) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). These particularity requirements ensure that a defendant has sufficient information to formulate a defense, protect against frivolous fraud claims, and prevent plaintiffs from relying on discovery to supply facts that should have been pleaded in the first instance. *Progressive N. Ins. Co. v. Mitchell*, No. 9:20-cv-673, 2021 WL 914456, at *3 (D.S.C. Mar. 10, 2021); *R.L. Mlazgar Assocs., Inc. v. HLI Sols., Inc.*, No. 6:22-cv-04729, 2025 WL 2224039, *4 (D.S.C. Aug. 5, 2025) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (noting that Rule 9(b) serves multiple purposes: "(1) to put defendants on notice so that they have sufficient information to formulate a defense; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions in which all facts are learned after discovery; and (4) to protect defendants from harm to their goodwill and reputation.").

Notwithstanding the demanding standard imposed by Rule 9, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *TTI Consumer Power Tools Inc. v. Engineered Plastic Components Inc.*, No. 8:22-cv-04085, 2024 WL 4277754, *7 (D.S.C. Sept. 24, 2024)) (quoting *Harrison*, 176 F.3d at 784); *Harley,* 2026 WL 1505108, at *2; *In re Abell*, 549 B.R. 631, 647 (Bankr. D. Md. 2016).

Federal Rule of Civil Procedure 12(g), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), provides a procedural bar to filing successive motions to dismiss. More specifically, it provides:

> **Limitation on Further Motions**. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this

> rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Rule 12(h)(2), in turn, provides that certain defenses such as the failure to state a claim upon which relief can be granted are not permanently waived but must be raised (A) in a pleading allowed under Rule 7(a) (i.e., a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, or a court-ordered reply); (B) by a motion for judgment on the pleadings under Rule 12(c); or (C) at trial. Rule 12(h)(3) allows a motion to dismiss for lack of subject-matter jurisdiction to be filed at any time—an issue not raised in Defendant's Motion. *See* Fed. R. Civ. P. 12(h)(3). As the leading bankruptcy treatise has stated: "The purpose of subdivision (g) is to prevent a series of motions which delay the proceedings." 10 *Collier on Bankruptcy* ¶ 7012.11 (16th ed. 2026). Rule 12(g)(2) "is intended to eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense." *Clark v. Brown*, 536 F.Supp.3d 56, 66 (E.D. Va. 2021).

## II. THE AMENDED COMPLAINT ADEQUATELY STATES CLAIMS FOR RELIEF

Following the Prior Order and the directives set forth therein, Plaintiffs amended the first cause of action based on 11 U.S.C. § 523(a)(2) and divided it into two separate causes of action—basing Count I on § 523(a)(2)(A) and Count II on § 523(a)(2)(B). The Amended Complaint is forty-two pages long and is no less specific than the Original Complaint. Rather, it incorporates new information that was not previously disclosed, including debts that Kooi Law allegedly owed at the time Defendant sought and obtained the loan. The Amended Complaint also provides further detail regarding how Plaintiffs relied on Defendant's representations and were harmed as a result.

From the outset, and prior to delving into the adequacy of the pleaded claims, the Court will address three arguments that Defendant raises in the Motion: (1) that Plaintiffs extended the

funds to Kooi Law and Defendant merely guaranteed the obligation and the Amended Complaint fails to plead facts connecting Defendant's own allegedly fraudulent conduct to the creation and scope of his guaranty debt; (2) that the Amended Complaint does not plausibly allege a debt owed to Bridgehead Capital; and (3) that invoking Count II and the misrepresentations alleged under 11 U.S.C. § 523(a)(2)(B) "to the extent" the Court determines that any or all of the writings are statements respecting the Defendant's or Kooi Law's financial condition does not cure the ambiguity identified in the Prior Order.

First, Defendant's status as a guarantor necessarily does not insulate him from liability. From what the Court can discern, Defendant argues that the Amended Complaint impermissibly conflates Defendant's roles as guarantor and borrower. The well-pleaded allegations in the Amended Complaint, considered under applicable law, foreclose this formalistic distinction at this stage of the proceeding. Courts have held, based on the facts before them, that guaranty debt may be nondischargeable when the guarantor's fraud induced the underlying loan. *See, e.g., Field v. Mans*, 516 U.S. 59, 63 (1995) (finding that a guaranty may be excepted from discharge under § 523(a)(2)(A) where the guarantor made false representations upon which the plaintiffs justifiably relied); *In re Rifai*, 604 B.R. 277, 312 (Bankr. S.D. Tex. 2019) (finding that the guaranty debt was nondischargeable under § 523(a)(2)(A) based upon the debtor guarantor's false representations for a loan the debtor incurred for his 100%-owned limited liability company); *In re Moore*, 365 B.R. 589, 607 (Bankr. D Md. 2007); *Cf. Bartenwerfer v. Buckley*, 598 U.S. 69, 82-83 (2023) (finding that a debtor was liable as a partner for her partner's fraud and the debt was nondischargeable under § 523(a)(2)(A) despite debtor not having personally committed the fraud). Here, Defendant was not merely a guarantor of the loan at issue. He was also the sole owner, principal, and controlling person of Kooi Law; he signed the written statements alleged to contain

misrepresentations; and he participated in calls during which representations were made to Plaintiffs. These well-pleaded allegations support treating Defendant's alleged representations as integral to the transaction, notwithstanding that Kooi Law was the borrower and received the loan proceeds. Accordingly, the distinction between the corporate borrower and Defendant, viewed in isolation, does not warrant dismissal of the causes of action.

Second, the novel argument that the Amended Complaint does not plausibly allege a debt owed to Bridgehead Capital is similarly unavailing. Bridgehead Capital has been a named plaintiff since the commencement of the adversary proceeding. Although Defendant did not raise that argument in the First Motion seeking to dismiss the Original Complaint, he now argues that the Amended Complaint does not allege that Bridgehead Capital advanced any portion of the funds, was named as obligee under the Guaranty, received an assignment of the debt, or otherwise holds a separate debt against Defendant. Notably, both Plaintiffs filed separate proofs of claim asserting the amount of the loan at issue in Defendant's pending chapter 7 case. Defendant's schedule F lists the business debt owed to Bridgehead Capital and the Statement of Financial Affairs lists the lawsuit that both Plaintiffs filed against Defendant in the Superior County in the County of Mecklenburg, North Carolina.[15] The Amended Complaint alleges that Bridgehead is BHF's manager "with fully delegated responsibility for overseeing [BHF's] business and managing its day-to-day operations." (Am. Compl. ¶¶ 12.) It also alleges that both Plaintiffs were harmed by Defendant's actions and filed suit in Mecklenburg County. (Am. Compl. ¶ 168.) The argument as to whether Defendant is liable to both entities is an issue that does not need to be decided at this

[15] C/A No. 26-00159, ECF No. 1. "In reviewing a Rule 12(b)(6) dismissal, [the Court] may properly take judicial notice of matters of public record." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004); *see also* Fed. R. Evid. 201(b)(2) (providing that the court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); *In re Salley*, 679 B.R. 245, 250 (Bankr. D.S.C. 2026) (taking judicial notice of public tax records available online).

stage. Even if the Court were to conclude that the debt is held solely by BHF, that determination would at most limit the judgment as to which entity holds the debt—it would not warrant dismissal of any count of the Amended Complaint.

As to the first two arguments, the Court further notes that Defendant previously moved to dismiss the Original Complaint involving the same parties and is now raising these additional grounds that could have been presented in its earlier motion. In addition to the reasoning above, the Court also declines to permit Defendant to use its Motion directed to the Amended Complaint to advance grounds for dismissal that were available but omitted from its prior motion. *See* Fed. R. Civ. P. 12(g)(2).

As to the third argument, the Court understands Defendant to contend that Plaintiff's decision to plead Count II in the alternative somehow undermines their claims and "does not cure the ambiguity identified in the prior motion and addressed by the Court's amendment order." Federal Rule of Civil Procedure 8, incorporated in Federal Rule of Bankruptcy Procedure 7008, expressly permits a party to plead alternative claims for relief. Fed. R. Civ. P. 8(d)(2). A party may also assert separate claims in the alternative, even where those claims are inconsistent. Fed. R. Civ. P. 8(d)(3). Accordingly, Plaintiff may pursue a claim under § 523(a)(2)(B) in the alternative in the event the Court determines that the alleged debt does not satisfy the requirements for nondischargeability under § 523(a)(2)(A).

**a. COUNT I-11 U.S.C. § 523(A)(2)(A)**

Plaintiffs have amended Count I to specify that they are seeking relief under § 523(a)(2)(A), which excepts from discharge a debt obligation "to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a). An actionable claim pursuant to

§ 523(a)(2)(A) requires a plaintiff to allege that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation with the intent to deceive or defraud the creditor; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged as a proximate result of the false representation. *See Colombo Bank v. F.S.B. v. Sharp*, 477 B.R. 613, 619 (D. Md. 2008); *aff'd sub nom.*, *In re Sharp*, 340 F. App'x 899 (4th Cir. 2009) (unpublished per curiam opinion); *Tri-State Surgical Supply v. McKinnon (In re McKinnon)*, 653 B.R. 821, 828 (Bankr. D.S.C. 2023); *In re Goodwich*, 517 B.R. 572, 586 (Bankr. D. Md. 2014); *Harley*, 2026 WL 1723661, at *2; *Thompson v. Ollis (In re Ollis)*, No. 20-02775, Adv. No. 20-80077, 2021 WL 3411434, at *4 (Bankr. D.S.C. Aug. 4, 2021).

Among other arguments, Defendant contends that Count I does not plead a plausible fraud claim concerning the Rairigh matter. Defendant argues the Amended Complaint does not establish that the September 2023 Probate Court Order and the April 2024 Settlement Agreement concern "the same agreement, all the same claimants, and all the same claims" nor that the Probate Court Order "eliminated every remaining condition, approval, execution requirement, or payment step."[16]

The Amended Complaint alleges that (1) Defendant made false representations regarding when the Rairigh Case was resolved, the status of probate court approval and when an expected payout would occur; (2) Defendant knew those representations were false at the time they were made because he was aware that probate court approval had already been obtained in September of 2023; (3) Defendant intended to deceive Plaintiffs into believing that probate court approval of the settlement of the Rairigh Case was still required and would delay any anticipated payment

[16] Mot. to Dismiss 5, ECF No. 27.

under the Settlement Agreement; (4) Plaintiffs justifiably relied on Defendant's representations because he was a member in good standing with the Indiana and Illinois bar associations, had been licensed to practice law since 2000, and was knowledgeable about the status of the cases he and his firm were actively working on, and did not verify the veracity of his representations due to his statements that there was a "very strong confidentiality clause" in the Settlement Agreement; and (5) Plaintiffs were damaged as a proximate result of Defendant's representations because Plaintiffs were induced into approving the Loan and BHF was induced into making the loan to Defendant which was not repaid.

In the Objection to the Motion, Plaintiffs argue that the Amended Complaint alleges and its supporting exhibits illustrate that Defendant personally filed the Verified Petition to Appoint Administrator for the Sole Purpose of Collecting Damages for a Wrongful Death Claim and Verified Petition to Compromise and Settle Wrongful Death Claim in the probate court on September 26, 2023, seeking approval of a $120,000.00 settlement of the Rairigh Case against Schneider Electric with $40,000 payable to Kooi Law. (Am. Compl. ¶¶ 121-129.) The probate court entered its order approving the settlement on September 28, 2023—more than six months before Defendant represented to Plaintiffs that a settlement in the Rairigh Case had just been reached "via pre-suit mediation" in March 2024. (Am. Compl. ¶¶ 21, 115, 125, 129.) Defendant further represented to Plaintiffs that probate court approval would need to be obtained "following a hearing," even though he had already obtained that approval from the probate court months earlier. (Am. Compl. ¶¶ 120, 135.) Moreover, the Amended Complaint's allegations and Exhibits H-J identify the same parties. At this stage, accepting these allegations as true, the Court finds that Plaintiffs have pled sufficient facts to allow the Court to reasonably infer that Defendant obtained a loan from Plaintiffs by false representation under 11 U.S.C. § 523(a)(2)(A).

Defendant also argues that the Amended Complaint does not plead that the WIP Report was false when issued and asks that Count I's work-in-progress theory be dismissed. Defendant contends that the WIP Report listed categories of pending matters and projected aggregate fees and posits that subsequent results from the cases listed and failure to receive the projected payments does not by itself raise the falsity of the report or false statements made therein. As Plaintiff rebuts, however, the Amended Complaint does not merely allege that the WIP Report's projections failed to materialize. It alleges that (1) the WIP Report "falsely inflated the number and types of cases Kooi Law was working" (Am. Compl. ¶ 143); (2) the WIP Report indicated he and Kooi Law were handling close to 300 cases with anticipated fees totaling nearly $10 million; yet by August 2025—barely one year later—Defendant reported only 9 active cases, stated that he had received no payments, and elected not to pursue the remaining cases. (Am. Compl. ¶¶ 152. 190.) Plaintiffs further allege that Defendant has "failed to provide any reasonable basis for the reduction in the number of the cases other than the claims were no longer feasible or desirable and therefore he decided to no longer pursue them." (Am. Compl. ¶ 111.) Defendant's argument that the WIP Report was not false when it was issued raises a factual issue that may be reserved for a later stage of the proceeding—after an appropriate record has been made.

At this point in the case, Plaintiffs have not yet had the opportunity to conduct full discovery, and the allegations will have to be further substantiated and refined at later stages of this proceeding. At this time, however, the Amended Complaint is pled sufficiently, even under the heighted standards of Rule 9, to put Defendant on notice of the particular allegations and facts raised to prepare a defense. A motion to dismiss for failure to state a claim is not intended to be equivalent to trying the case on the pleadings. Moreover, while Defendant suggests that the Court dismiss portions of the claim based on particular statements or representations, such piecemeal

dismissal is not warranted when considered in the context of the cause of action as a whole, which as the Court finds, adequately states a claim for relief.

### III. COUNT II - 11 U.S.C. § 523(A)(2)(B)

In Count II of the Amended Complaint, Plaintiffs allege a claim under 11 U.S.C. § 523(a)(2)(B), which excepts from discharge a debt obligation "to the extent obtained by— . . . (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . ." A claim under subsection (2)(B) requires Plaintiffs to demonstrate "reasonable reliance," which is a more demanding showing than the "reasonable reliance" standard of subsection (2)(A). 11 U.S.C. § 523(a)(2)(A)-(B).

Defendant argues that Count II does not clearly identify which statements are allegedly actionable under § 523(a)(2)(B). The Amended Complaint includes allegations identifying Defendant's written statements as those made in the Initial Application, the May 6th Email, the Settlement Agreement, the Loan Application and the WIP Report. *See* Am. Compl. ¶¶ 177-191. The specific representations include, among other things: (1) in the Initial Application, the statement that settlement of the Rairigh Case was reached on April 2, 2024, and Kooi Law expected payment to be received on September 2, 2024 (Am. Compl. ¶ 180.); (2) in the May 6th E-mail, that settlement of the Rairigh Case occurred via pre-suit mediation in March of 2024, that payout is required to be made within 180 days, and required probate court approval following a hearing (Am. Compl. ¶ 181.); (3) in the Loan Application, Defendant's failure to disclose that Defendant and Kooi Law were subject to pending and/or threatened litigation and the existence of other outstanding debt obligations, some of which were in default (Am. Compl. ¶ 186.); and (4) in the

WIP Report, the statement that he and Kooi Law were working on over 200 cases with settlement values nearing $10,000,000.00. (Am. Compl. ¶ 190.) The Court finds these allegations are sufficiently specific to put Defendant on notice of the representations that are the subject of Plaintiffs' § 523(a)(2)(B) claim so that he has sufficient information to formulate a defense. *See Progressive*, 2021 WL 914456, at *3 (observing that the particularity requirements for actions sounding in fraud ensure that a defendant has sufficient information to formulate a defense).

Defendant further argues that Count II of the Amended Complaint does not plead several of the alleged false statements with particularity and fails to provide sufficient allegations regarding certain debts, the status of pending or threatened litigation, alleged involvement with another entity, and statements concerning financial condition. The Court addressed this argument in the Prior Order, expressly stating that it did not agree with Defendant's arguments that the Complaint did not plead with sufficient particularity the "who, what, when, where, and how" of the alleged false statements or the scienter or intent behind the misrepresentations. As stated above, the Court declines to revisit the same arguments it had previously considered or to consider additional arguments that could have been raised in the Defendant's prior motion to dismiss but were not raised.

Furthermore, some of Defendant's arguments appear to contradict his own admissions in the bankruptcy proceeding, the claim register, and other publicly available state-court records of which the Court may take judicial notice. For instance, Defendant contends that the Amended Complaint does not sufficiently tie the BHG debt to Kooi Law such that it needed to be disclosed in the Loan Application. Defendant's own schedules, however, filed under penalty of perjury, reveal that BHG Loan was an obligation of Kooi Law and Schedule H lists Kooi Law as a co-debtor on each BHG obligation. The documents attached to BHG's proofs of claim filed in

Defendant's chapter 7 case also indicate that BHG's loan was an obligation of Kooi Law.[17] Similarly, Defendant argues that although Count II alleges that Defendant falsely stated that no Kooi Law partner was involved with another law firm or legal entity, the Amended Complaint does not identify the entity in which Defendant was allegedly involved. The Amended Complaint, however, alleges that Defendant was a member of Kooi Investments which he formed in 2008 and dissolved on June 30, 2025—after the Loan Application was submitted—and alleges he was a member of another law firm or legal entity at the time he applied for the loan. (Am. Compl. ¶¶ 97, 101, 189.)

The issue before the Court is whether the pleadings are sufficient and whether the Court can reasonably infer that Defendant is liable for misconduct based on the allegations of the Amended Complaint, which are accepted as true. After careful review of the allegations in Count II of the Amended Complaint and the arguments in the briefs, the Court finds that the factual allegations and reasonable inferences drawn therefrom—construed in the light most favorable to Plaintiffs—are sufficient to defeat Defendant's the motion to dismiss under Rule 12(b)(6) as to Count II.

## IV. COUNT III - 11 U.S.C. § 523(A)(6)

In Count III of the Amended Complaint, Plaintiffs allege a claim under § 523(a)(6), which prohibits the discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The allegations as to Plaintiffs' § 523(a)(6) cause of action have not been altered by the Amended Complaint. The Court previously determined in the Prior Order that that the Complaint adequately alleged a cause of action under § 523(a)(6). *See* Prior Order at 25. In the Motion, Defendant raises additional

[17] C/A No. 26-00159, Proof of Claim No. 20-1.

arguments for dismissal of the § 523(a)(6) claim which were not raised in his prior motion to dismiss regarding Plaintiffs' alleged failure to plead facts allocating Defendant's alleged guaranty debt and whether the Amended Complaint plausibly alleges a separate debt owed to Bridgehead Capital. For the reasons set forth above, both arguments could have been raised in Defendant's first motion to dismiss. Therefore, the Motion should be denied as to Count III.

## CONCLUSION

For the foregoing reasons, it is therefore

**ORDERED** that Defendant's Motion to Dismiss is **DENIED** as to all counts of the Amended Complaint.

**IT IS FURTHER ORDERED** that Defendant shall file and serve an answer to the Amended Complaint within fourteen (14) days after the entry of this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**10/20/2026**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA
SEAL

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 10/20/2026